**JESSICA J. OLIVA**
California State Bar No. 312435
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Jessica_Oliva@fd.org

Attorneys for Mr. Pedro De Jesus Bernal-Cota

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PEDRO DE JESUS BERNAL COTA,<br><br>Defendant. | CASE NO.: 21-CR-2274-TWR<br><br>Hon. Todd W. Robinson<br>Courtroom 3A<br>Date: July 1, 2022<br>Time: 9:30 a.m.<br><br>MR. BERNAL-COTA SENTENCING MEMORANDUM |

Mr. Bernal-Cota joins the government's recommendation for a sentence of 24 months. He additionally asks the Court to impose a six-month, concurrent sentence for the supervised release violation in 21-CR-10127-TWR.

**I.      Mr. Bernal-Cota's Personal History and Characteristics**

**A.      Mr. Bernal-Cota Has Worked His Entire Life to Provide for His Family.**

Mr. Bernal-Cota has dedicated his entire life to working to financially provide for his family. He grew up in Sinaloa, Mexico with his family until he moved to the United States when he was just 22 years old. He moved to the U.S. with his brother so that he could provide for his young family. For over twenty years, he has worked in construction with brief breaks in the meat packing industry and auto service industry.

With the modest income he earned, he provided for his young children. After his removal in 2019, he moved back to Mexico and worked for his brother-in-law's construction company in Tecate. He was financially stable and did quite well for the last few years.

### B. Mr. Bernal-Cota Was Threated by the Cartel.

But, as he stated in his post-arrest statement, Mr. Bernal-Cota came to the United States because he was fleeing cartel violence. *See* Pre-Sentence Report, ECF No. 41, ¶ 5. Specifically, he was attempting to get away from family members who work for a cartel. After Mr. Bernal-Cota was deported in 2019, he returned to his hometown in Sinaloa. At first, things were fine but after about a year, these family members started pressuring him to work for their cartel. Their requests quickly turned into threats. Because Mr. Bernal-Cota's brother was kidnapped and tortured in 2017, he knew he had to take their threats seriously.

Fearing for his life, Mr. Bernal-Cota relocated to Tecate where his brother, sister, and brother-in-law all live. There, he worked for his brother-in-law's construction company as a technical assistant. *See* Ex. A. Unfortunately, the cartel was able to find him again in Tecate. The same family members made it very clear to Mr. Bernal-Cota that he had to work for their organization. He also suspected that the cartel began extorting his brother-in-law's company. In an effort to buy himself more time, Mr. Bernal-Cota told them he would work for them but instead made plans to be smuggled into the United States. Soon thereafter, he entered the United States to escape their threats and coercion. *See* Ex. B. He felt desperate and believed he was out of other options.

### C. Mr. Bernal-Cota understands his options: Mexico or Prison.

This is not Mr. Bernal-Cota's first re-entry conviction, but he understands that if he comes back again, he will spend even more of his life in custody. Mr. Bernal-Cota has two minor children that financially depend on him. As a result, he understands that he cannot afford to continue to spend his life behind bars.

Upon release, he now plans to move to Spain with his family. There, he has a close family friend who can provide him with a place to live and job at his Mexican restaurant. Mr. Bernal-Cota's family is prepared to move with him. While it will be difficult to start over in a different country, he is committed to providing his family with a safe place to live.

## II. Because Mr. Bernal-Cota will Likely Be Deported, this Court Should Not Impose Supervised Release.

The Court should not impose a term of supervised release because it is contrary to the Guidelines and policy goals of supervision. Guideline § 5D1.1(c) states that "[t]he court ordinarily should not impose a term of supervised release in a case which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." Because Mr. Bernal-Cota will very likely be deported after serving his custodial sentence, the guidelines call for no supervision in this case.

## III. Conclusion

If this Court follows the parties' request, Mr. Bernal-Cota will be in his late-forties when he gets back to Mexico. Though he hoped to improve his and his family's lives in the United States, each day in custody here is a constant reminder to him that this is not the life he wants to live. Thus, a sentence of 24 months is sufficient, but not greater than necessary to ensure that Mr. Bernal-Cota does not return to the United States without permission again.

Respectfully submitted,

Dated:  June 24, 2022

*s/ Jessica J. Oliva*
JESSICA J. OLIVA
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Pedro de Jesus Bernal-Cota

Email:  Jessica_Oliva@fd.org